NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

ROBERT ZINK
Acting Chief, Fraud Section
DANIEL J. GRIFFIN
Assistant Chief
ROBYN N. PULLIO
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
    4811 Airport Plaza Drive, 5th floor
    Long Beach, California 90815
    Telephone: (202) 365-6897 (Pullio)
             (202) 774-7985 (Griffin)
    E-mail: Robyn.Pullio@usdoj.gov;
          Daniel.Griffin3@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:17-CR-00420-SJO |
|---|---|
| Plaintiff, | GOVERNMENT'S OMNIBUS MOTION IN LIMINE REGARDING CERTAIN EVIDENCE AT TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| ALEKSANDR SURIS and MAXIM SVERDLOV, | |
| Defendants. | DATE:      August 6, 2019<br>TIME:      9:00 a.m.<br>COURTROOM: 10C |

    Plaintiff United States of America, by and through its counsel of record, the Fraud Section of the Department of Justice, hereby submits the following motions in this Omnibus Motion in Limine:

1.   Government's Motion in Limine to Exclude Evidence of Legitimate Services Provided by Defendant;

2.   Government's Motion in Limine to Preclude Improper Use of Law Enforcement Interview Reports at Trial;

3.   Government's Motion in Limine to Exclude Self-Serving Hearsay Statements Offered by Defendants;

4.   Government's Motion in Limine to Exclude Argument Nullifying Jury;

5.   Government's Motion in Limine to Exclude Evidence Related to Criminal Referral; and

6.   Motion in Limine to Exclude Argument and Evidence that Medicare was Negligent.

This Motion is based on the attached Memorandum of Points and Authorities, the files and records of this case, and such further evidence and argument as may be presented at any hearing on the motion.

Dated: July 16, 2019                Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

ROBERT ZINK
Acting Chief, Fraud Section

      /s/
_____
DANIEL J. GRIFFIN
Assistant Chief
ROBYN N. PULLIO
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION..................................................1

II.    BACKGROUND....................................................3

III.   MEET AND CONFER...............................................4

IV.    ARGUMENT......................................................4

       A.    Government's Motion in Limine to Exclude Evidence of
             Legitimate Services Provided by Defendants Outside of the
             Counts in the Indictment................................4

       B.    Government's Motion in Limine Regarding the Proper Use of
             Law Enforcement Interview Reports.......................6

       C.    Government's Motion in Limine To Exclude Hearsay
             Statements Offered by Defendants.......................10

       D.    Government's Motion in Limine To Exclude Argument
             concerning Jury Nullification..........................12

       E.    Government's Motion in Limine Excluding Evidence of
             Criminal Referral......................................13

       F.    Government's Motion in Limine To Exclude Argument and
             Evidence that Medicare or CIGNA were Negligent.........14

V.     CONCLUSION...................................................16

i

**TABLE OF AUTHORITIES**

**Cases**

Fox v. United States, 381 F.2d 125, 129 (9th Cir. 1967)...........13

Herzog v. United States, 226 F.2d 561, 565 (9th Cir. 1955)........5

Palermo v. United States, 360 U.S. 343, 349 (1959).............8, 11

United States v. Arambula Ruiz, 987 F.2d 599, 604 (9th Cir. 1993)..6

United States v. Brika, 416 F.3d 514, 529 (6th Cir. 2005).........11

United States v. Ciccone, 219 F.3d 1078, 1083 (9th Cir. 2000).....19

United States v. Claiborne, 765 F.2d 784, 801 (9th Cir. 1985)......9

United States v. Coyle, 63 F.3d 1239, 1244 (3rd Cir. 1995).......18

United States v. Davis, 226 F.3d 346, 358-59 (5th Cir. 2000)......18

United States v. Donato, 99 F.3d 426, 433 (D.C. Cir. 1996)........10

United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012).........5

United States v. Farley, 2 F.3d 645, 654-55 (6th Cir. 1993).......10

United States v. Foley, 871 F.2d 235, 239 (1st Cir. 1989).........11

United States v. Hill, 526 F.2d 1019, 1026 (10th Cir. 1975).......12

United States v. Jordan, 316 F.3d 1215, 1255 (11th Cir. 2003).....10

United States v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980).......11

United States v. Lindsey, 850 F.3d 1009, 1015 (9th Cir. 2017).18, 19

United States v. McCall, 592 F.2d 1066, 1068 (9th Cir. 1979)......13

United States v. Mitchell, 502 F.3d 931, 964 (9th Cir. 2007)......14

United States v. Morris, 957 F.2d 1391, 1402 (7th Cir. 1992).....10

United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000)....13, 14

United States v. Pistante, 453 F.2d 412, 413 (9th Cir. 1971)......13

United States v. Powell, 955 F.2d 1206, 1212-13 (9th Cir. 1991)...15

United States v. Price, 542 F.3d 617, 621 (8th Cir. 2008)..........9

United States v. Reed, 575 F.3d 900, 921 (9th Cir. 2009)...........9

United States v. Roseboro, 87 F.3d  642, 646 (4th Cir. 1996)......10

United States v. Simpson, 460 F.2d 515, 519 (9th Cir. 1972).......15

United States v. Thomas, 116 F.3d 606, 614-16 (2nd Cir. 1997).....15

United States v. Thomas, 377 F.3d 232, 243-44 (2nd Cir. 2004).....19

United States v. Whitfield, 590 F.3d 325, 361 (5th Cir. 2009)......5

United States v. Williams, 998 F.2d 258, 269 (5th Cir. 1993)......10

Williamson v. United States, 512 U.S. 594, 599 (1994)............14

**Rules**

Fed. R. Evid. 401...............................................5

Fed. R. Evid. 402...............................................5

Fed. R. Evid. 403.......................................3, 6, 14, 16

Fed. R. Evid. 608...............................................2

Fed. R. Evid. 608(a)...........................................13

Fed. R. Evid. 608(b)........................................13, 14

Fed. R. Evid. 609...........................................2, 13

Fed. R. Evid. 801(c)........................................2, 11

Fed. R. Evid. 801(d)(2)........................................10

Fed. R. Evid. 801(d)(2)(A)..................................2, 11

**Statutes**

18 U.S.C. § 1347................................................3

18 U.S.C. § 1349................................................3

18 U.S.C. § 1956(h)............................................3

18 U.S.C. § 3500.........................................7, 8, 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The government submits this Omnibus Motion in Limine ("Omnibus Motion") on the following matters: (1) Motion in Limine to Exclude Evidence of Legitimate Services Provided by Defendants; (2) Motion in Limine to Preclude Improper Use of Law Enforcement Interview Reports; (3) Motion in Limine to Exclude Self-Serving Hearsay Statements Offered by Defendants; (4) Motion in Limine to Preclude Defendants from Arguing for Jury Nullification; (5) Motion in Limine to Exclude Evidence Related to Criminal Referral; and (6) Motion in Limine to Exclude Argument and Evidence that Medicare was Negligent.

The government submits the first motion in limine to exclude evidence that defendants provided legitimate services outside of the conduct charged in the First Superseding Indictment ("FSI").  Such evidence is irrelevant to disprove defendants' conduct as to the counts charged, and any hypothetical probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

The government submits the second motion in limine to preclude defendants from improperly using law enforcement interview reports as prior inconsistent statements against witnesses who did not write, review, or adopt the interview summaries.  Agents from the Federal Bureau of Investigation ("FBI") and Health and Human Services Office of the Inspector General ("HHS-OIG"), and Medicare contractors who wrote reports summarizing interviews of individuals ("interview summaries"), some of whom will be witnesses at trial.  Because the subjects (as opposed to the authors) of the interview summaries have not read, reviewed, or adopted the summaries, the

1

government asks that the defendants be precluded from introducing the content of the interview summaries to impeach subjects of the reports during cross-examination or publishing the contents of the interview summaries to the jury.

The government submits the third motion to exclude self-serving hearsay statements offered by defendants.  The government intends to present testimony from an HHS-OIG agent about statements made by the defendant Sverdlov.  Such evidence is admissible under Federal Rule of Evidence 801(d)(2)(A) as statements of an opposing party. However, defendants may not themselves introduce their own out-of-court statements into evidence because that is hearsay within the scope of Rule 801(c).

The government submits the fourth motion to exclude argument for jury nullification.  The defendants may not argue that the jury can find a defendant "not guilty," even if the law and facts would dictate a "guilty" verdict.

The government submits the fifth motion to exclude evidence related to a pending criminal referral pertaining to a government witness.  Evidence of such a criminal referral constitutes improper extrinsic impeachment and character evidence and, as such, is inadmissible under Rules 608 and 609.  Further, under Rule 403, any theoretical probative value of any such impeachment is substantially outweighed by danger of misleading the jury.

The government submits the sixth motion to exclude the admission of any evidence (including through defense cross-examination of government witnesses) or argument that Medicare's negligence contributed to or caused defendants' fraud.  Medicare's purported negligence is irrelevant and inadmissible as a matter of

law, and any hypothetical probative value of such evidence is substantially outweighed by the danger of misleading the jury, confusing the issues before the Court, wasting time, and unfair prejudice to the government under Rule 403.

## II.   **BACKGROUND**

Defendants Aleksandr Suris ("defendant Suris") and Maxim Sverdlov ("defendant Sverdlov") are charged in the FSI filed on June 5, 2018, with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 1) against both defendants; four counts of health care fraud in violation of 18 U.S.C. § 1347 against both defendants (Counts 2-5); one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 against defendant Suris (Count 6); six counts of health care fraud in violation of 18 U.S.C. § 1347 against defendant Suris (Counts 7-12); and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) against both defendants (Count 13).  Dkt. 52.

The FSI alleges that the defendants variously defrauded Medicare (Suris and Sverdlov) and CIGNA (Suris only) by submitting false and fraudulent claims to these health care benefit programs on behalf of Royal Care Pharmacy ("Royal Care") which purported that certain patient prescriptions had been filled, and that the prescribed medications were medically necessary and provided to the patients.  However, in truth and fact, Suris and Sverdlov were aware that these prescriptions were never filled or provided to Medicare and CIGNA patients, and that on certain occasions the prescribed medications were not medically necessary.  The FSI further alleges that in order to facilitate this fraudulent scheme to bill Medicare and CIGNA for medications that were billed by Royal Care Pharmacy

but never filled or provided to patients, as well as to derive cash from this fraud, defendants purchased fictitious invoices from a drug wholesale company, TriMed Medical Wholesalers, Inc. ("TriMed"). TriMed's fictitious invoices to Royal Care Pharmacy indicated that Royal Care Pharmacy had purchased certain amounts of prescription drugs from TriMed.  However, this never actually occurred, and TriMed never actually provided any of the drugs listed on the fictitious invoices that Suris and Sverdlov paid for on behalf of Royal Care Pharmacy.

## III. **MEET AND CONFER**

The government conferred with counsel for both defendants regarding this Motion.

## IV. **ARGUMENT**

### A. **GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF LEGITIMATE SERVICES PROVIDED BY DEFENDANTS OUTSIDE OF THE COUNTS IN THE INDICTMENT[1]**

The conspiracy to commit health care fraud and health care fraud counts in the FSI (Counts 1 through 12) focus on certain fraudulent submissions to Medicare and CIGNA for services that were not needed or were not provided.  With this motion, the government seeks to exclude evidence that defendants may have provided legitimate services outside of the charged conduct.  Such evidence is irrelevant, and any hypothetical probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

Evidence regarding legitimate conduct outside of the charged conduct is not relevant or admissible under Federal Rules of

---

[1] Suris objects to this motion.  Sverdlov does not oppose the motion.

4

Evidence 401 and 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401; see also United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012) (citing Fed. R. Evid. 402) (noting that "relevant evidence is generally admissible").  "A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions."  Herzog v. United States, 226 F.2d 561, 565 (9th Cir. 1955), adhered to on reh'g, 235 F.2d 664 (9th Cir. 1956); see also United States v. Whitfield, 590 F.3d 325, 361 (5th Cir. 2009) ("[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.") (internal quotation omitted)).

In this case, evidence that legitimate services may have been provided on other occasions than those charged would not tend to make the existence of any fact that is of consequence to the determination of the action "more or less probable than it would be without the evidence" and is therefore not relevant.  Fed. R. Evid. 401.  First, this evidence would not relate in any way to any of the counts in the indictment.  Second, this evidence would not tend to disprove the defendants' participation in the charged scheme to defraud Medicare and CIGNA.  Indeed, defendants could have provided legitimate services on some occasions, while also defrauding Medicare and CIGNA on the occasions charged in the FSI.  In effect, the defendants would be trying to prove their innocence of the charged crimes by claiming that they are innocent in matters of which they are not charged.  This is an improper tactic which should not be permitted.

Even if purportedly legitimate services had some marginal relevance, they would still be inadmissible under Federal Rule of Evidence 403, as the danger of misleading the jury, confusing the issues, and wasting time substantially outweighs any theoretical probative value of this evidence.  See United States v. Arambula Ruiz, 987 F.2d 599, 604 (9th Cir. 1993) ("The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence . . . under Rule 403.") (quoting Fed. R. Evid. 403 Advisory Committee's Note) (internal quotation marks omitted).

The factual issues before the Court should be limited to the charged conduct in the FSI.  Any evidence that the defendants may have provided legitimate services at times other than those charged in the FSI is irrelevant, and any hypothetical probative value of such evidence is substantially outweighed by the considerations of Rule 403.  Therefore, the defendants should be precluded from presenting evidence of purportedly legitimate services.

### B.   GOVERNMENT'S MOTION IN LIMINE REGARDING THE PROPER USE OF LAW ENFORCEMENT INTERVIEW REPORTS[2]

As produced in discovery, various federal and state law enforcement agents wrote reports summarizing their interviews of certain witnesses, which the witnesses did not read, review, or adopt.  The government has provided these interview summaries to the defense, but these interview summaries are not statements of the person interviewed under the Jencks Act, 18 U.S.C. § 3500. Therefore, the government asks that the Court preclude defense counsel from introducing the content of the interview summaries to impeach the subject witnesses during cross-examination, publishing

---

[2] Suris and Sverdlov do not oppose this motion.

6

the contents of the interview summaries to the jury, or otherwise suggesting to the jury that the interview summaries are statements of witnesses who did not write them or adopt them.

In order to provide for full and fair cross-examination, the Jencks Act requires that after a witness for the United States testifies on direct examination, the government must provide the defense with any statements made by the witness that relate to the subject of his or her testimony.  18 U.S.C. § 3500.  A statement within the meaning of the Jencks Act is defined as "a written statement made by said witness and signed or otherwise adopted and approved by him;" a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously;" or a statement made by a witness to the grand jury.  Id. § 3500(e).

In Palermo v. United States, the Supreme Court held that because the Jencks Act is meant to restrict the defendant's use of discoverable statements to impeachment, 360 U.S. 343, 349 (1959), "only those statements which could properly be called the witness' own words should be made available to the defense."  Id. at 352. The Court went on to elaborate that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced."  Id. at 352-53.

Consistent with Palermo, interview summaries are not discoverable under the Jencks Act because they are not statements of the witness within the meaning of the statute.  Unless a witness has reviewed and adopted an interview summary – which was not the practice in this case – the interview summary is not a statement of

7

the witness under subsection (e)(1) of the Jencks Act.  Moreover, because the interview summaries were written after the interviews were completed and reflect the thought process and interpretations of the agent, they do not constitute a contemporary and substantially verbatim recital of the witness's statement under subsection (e)(2).

The Ninth Circuit has held that interview summaries written by an agent are not Jencks Act material as to the interviewed witness to the extent that the witness has not adopted or approved the summaries.  See United States v. Claiborne, 765 F.2d 784, 801 (9th Cir. 1985) ("[B]ecause the summaries represent . . . the agents' selection of certain information . . . the district court properly characterized the summaries as non-Jencks Act material."), abrogated on other grounds by Ross v. Oklahoma, 487 U.S. 81 (1988); United States v. Reed, 575 F.3d 900, 921 (9th Cir. 2009) (finding no Jencks Act violation when a government agent "had taken handwritten notes of interviews, converted them into a typed report, and then destroyed the original notes" because there was no evidence that the notes were "adopted or approved by any of the witnesses").

Other circuits have decided the question similarly.  See, e.g., United States v. Price, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the witnesses "approved or adopted" the interview summaries, "these documents are not discoverable under . . . the Jencks Act"); United States v. Jordan, 316 F.3d 1215, 1255 (11th Cir. 2003) (holding that interview summaries "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"); United States v. Donato, 99 F.3d 426, 433

(D.C. Cir. 1996) ("[T]he agent's notes and 302 report . . . are not covered by the Jencks Act."); United States v. Roseboro, 87 F.3d 642, 646 (4th Cir. 1996) ("[T]he district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous."); United States v. Farley, 2 F.3d 645, 654-55 (6th Cir. 1993) (holding that because there was "no proof that the statement was adopted or approved . . . it was not clearly erroneous . . . to deny defendants access to the FBI 302"); United States v. Williams, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); United States v. Morris, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted . . . and further because they were not a verbatim recital . . . but rather only an agent's summary . . . ."); United States v. Foley, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that the 302s are not substantially verbatim recitals . . . and recorded contemporaneously . . . .").

As the Supreme Court articulated in Palermo, "[i]t would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." 360 U.S. at 350. Accordingly, the government requests that the Court preclude defendants from using the interview summaries inconsistently with the law and rules of evidence. Particularly, the contents of interview summaries should not be used to impeach witnesses on the basis of prior inconsistent statements, because the statements are not the statements of the witnesses themselves. Nor should the defense be allowed to publish or

introduce the contents of the summaries as a prior inconsistent statement.  See United States v. Brika, 416 F.3d 514, 529 (6th Cir. 2005) (holding that interview summaries "have been deemed inadmissible for impeaching witnesses on cross-examination"), abrogated on other grounds by United States v. Booker, 543 U.S. 222 (2005); United States v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); United States v. Hill, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it").

For the foregoing reasons, the government respectfully requests that the Court order the defendants cannot use the interview summaries to impeach witnesses on the basis of inconsistent statements, not to publish or introduce the contents of the summaries as prior inconsistent statements, or otherwise suggest to the jury that the interview summaries are statements of witnesses who did not write them or adopt them.

### C.   GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE HEARSAY STATEMENTS OFFERED BY DEFENDANTS[3]

Under Federal Rule of Evidence 801(d)(2), the government may offer defendants' out-of-court statements as non-hearsay statements of an opposing party.  However, the defendants cannot seek to introduce their own out-of-court statements for their truth as those

---

[3] Suris does not oppose this motion.  The government was unable to reach Sverdlov for his position.

would be inadmissible hearsay.

A "statement offered against an opposing party," which "was made by the party in an individual or representative capacity," is not hearsay.  Fed. R. Evid. 801(d)(2)(A).  Defendants' false exculpatory statements, when offered by the government, are also admissible to prove consciousness of guilt rather than the truth of the statement.  See United States v. McCall, 592 F.2d 1066, 1068 (9th Cir. 1979) (per curiam) (in prosecution for possession of counterfeit money with intent to defraud, defendant's inconsistent exculpatory statements concerning source of counterfeit bills could be regarded as evidence of consciousness of wrongdoing), cert. denied, 441 U.S. 936 (1979); United States v. Pistante, 453 F.2d 412, 413 (9th Cir. 1971) ("False exculpatory statements by a party may be used not only to impeach, but also to prove consciousness of guilt and unlawful intent."); Fox v. United States, 381 F.2d 125, 129 (9th Cir. 1967) (defendant's lies regarding ownership of truck provided significant additional evidence of his guilt).

On the other hand, the defendants' self-serving exculpatory statements are not admissible when offered by defendants.  See Fed. R. Evid. 801(c), 802; United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) ("The self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay, but the non-self-inculpatory statements are inadmissible hearsay.") citing Williamson v. United States, 512 U.S. 594, 599 (1994).  Allowing a defendant to elicit his or her own exculpatory hearsay statements through witness testimony or cross-examination would allow the defendant to "place his exculpatory statements 'before the jury without subjecting [himself] to cross-

examination, precisely what the hearsay rule forbids.'" <u>Ortega</u>, 203 F.3d at 682, <u>quoting</u> <u>United States v. Fernandez</u>, 839 F.2d 639, 640 (9th Cir. 1988).

Defendants may not introduce their own exculpatory hearsay statements even when the defendant made the exculpatory statements alongside inculpatory ones. <u>See</u> <u>Williamson</u>, 512 U.S. at 599 ("We see no reason why collateral statements, even ones that are neutral as to interest, should be treated any differently from other hearsay statements that are generally excluded.") (citation omitted); <u>United States v. Mitchell</u>, 502 F.3d 931, 964 (9th Cir. 2007) (defendant's exculpatory statements not admissible at trial even though they were made in "a more broadly self-inculpatory confession").

For these reasons, the government respectfully requests that the Court exclude as hearsay the defendants' own statements when offered by the defendants.

### D. GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE ARGUMENT CONCERNING JURY NULLIFICATION[4]

Defendants should be barred from making any argument for, or otherwise attempting to seek, jury nullification. In <u>United States v. Thomas</u>, the Second Circuit held that a "jury has no more 'right' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty' . . . . Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power." 116 F.3d 606, 615 (2d Cir. 1997) (internal quotations and citations omitted). The Ninth Circuit has also confirmed that defendants are not entitled to jury instructions

---

[4] Suris does not oppose this motion. The government was unable to reach Sverdlov for his position.

concerning jury nullification.  <u>See</u> <u>e.g.</u>, <u>United States v. Powell</u>, 955 F.2d 1206, 1212–13 (9th Cir. 1991) (holding that the defendant has no right to instruct the jury to nullify itself); <u>United States v. Simpson</u>, 460 F.2d 515, 519 (9th Cir. 1972).  Accordingly, defendant should be precluded from arguing for or otherwise seeking jury nullification.

**E.   GOVERNMENT'S MOTION IN LIMINE EXCLUDING EVIDENCE OF CRIMINAL REFERRAL[5]**

Defendant Suris has informed the government that he may seek to introduce evidence related to a 2018 criminal referral from the United States Bankruptcy Trustee related to government witness Richard Kayseryan's bankruptcy proceedings.  Because evidence of a criminal referral from the bankruptcy trustee constitutes improper extrinsic impeachment and character evidence, it should be excluded.

Federal Rule of Evidence 608 lays out the proper means by which a party may attack a witness's credibility.  A witness's credibility may be attacked by reputation testimony about their character for untruthfulness.  Fed. R. Evid. 608(a).  However, except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of conduct in order to attack a witness' character for truthfulness.  Fed. R. Evid. 608(b).

The criminal referral for Kayseryan is not reputation testimony, and so is inadmissible under Rule 608(a), and is not a criminal conviction, and so is not admissible under Rule 609.  Accordingly, evidence of the criminal referral would constitute extrinsic evidence offered in order to attack the witness's

[5] Suris reserved the right to oppose this motion.  Sverdlov does not oppose the motion and asserted that such a criminal referral is not admissible.

character for truthfulness, and so would be inadmissible under Rule 608(b).

Finally, under Fed. R. Evid. 403, any theoretical probative value of any such impeachment is substantially outweighed by danger of misleading the jury.  The inferences created through the defendants' cross-examination regarding the criminal referral could only fairly be rebutted by allowing the government to introduce evidence of the pending nature or declination of that matter as substantive evidence.  Such a circumstance would result in a "mini-trial" on a secondary, subordinate issue that is irrelevant to the conduct charged in the FSI and would unduly delay the trial and likely confuse the jury.

### F.   GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE ARGUMENT AND EVIDENCE THAT MEDICARE OR CIGNA WERE NEGLIGENT[6]

The government seeks to preclude the admission of any evidence (including through defense cross-examination of government witnesses) or argument that Medicare's or CIGNA's negligence contributed to or caused defendants' fraud.

Because Medicare's or CIGNA's purported negligence is irrelevant to the criminal charges at issues in this case, any evidence or argument concerning purported negligence should be excluded.  Such evidence should also be excluded because any hypothetical probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

In a federal criminal fraud case, negligence on the part of a victim, even if proven, constitutes no defense to the charges.  The

---

[6] Defendants do not oppose this motion.

14

instant motion in limine seeks to preclude defendants from "blaming"
Medicare or CIGNA in the face of defendants' own deliberate
misconduct.  Defendants may seek to divert the jury's attention –
and waste the Court's valuable time – by pointing their fingers at
the victims, Medicare and CIGNA, which paid their fraudulent claims.
However, whether Medicare or CIGNA should have taken additional
steps or required more information in connection with these claims
is entirely irrelevant to the criminal charges in this case.  The
focus of this criminal trial should be on defendants' misconduct,
not on whether their victims should (or even could) have done more
to avoid defendants' fraud.

The negligence of the victim in failing to discover a
fraudulent scheme is not a defense to criminal conduct.  United
States v. Lindsey, 850 F.3d 1009, 1015 (9th Cir. 2017).  In Lindsay,
the Ninth Circuit joined its "sister circuits in holding that a
victim's negligence is not a defense to wire fraud.  Evidence of
lender negligence is thus not admissible as a defense to mortgage
fraud."  Id.  Lenders cannot "be victimized by intentional
fraudulent conduct with impunity merely because the lenders were
negligent . . . ."  Id. at 1014.  The Ninth Circuit's decision
followed similar holdings by several other courts of appeals.  See,
e.g., United States v. Coyle, 63 F.3d 1239, 1244 (3rd Cir. 1995) (in
mail fraud case, rejecting relevance of defendant's allegations that
victim was negligent, even if true); United States v. Davis, 226
F.3d 346, 358-59 (5th Cir. 2000) (affirming jury instruction that
"the naivety, carelessness, negligence, or stupidity of a victim
does not excuse criminal conduct, if any, on the part of a defendant
. . . .  Even the monumental credulity of a victim does not excuse a

15

defendant's fraud, if any"); <u>United States v. Thomas</u>, 377 F.3d 232, 243-44 (2nd Cir. 2004) (affirming restrictions on cross-examination of victim; rejecting defendant's argument that victim's foolishness vitiated defendant's fraudulent intent).

The Ninth Circuit's decision in <u>Lindsay</u> also comports with precedent that the government need not prove that the scheme was calculated to deceive persons of ordinary prudence and comprehension. <u>United States v. Ciccone</u>, 219 F.3d 1078, 1083 (9th Cir. 2000) ("[T]he wire-fraud statute protects the naive as well as the worldly-wise. . . . [T]he lack of guile on the part of those solicited may itself point with persuasion to the fraudulent character of the artifice.") (quotations omitted).

Here, the evidence will not support any claim of victim negligence made by defendants, and any such evidence is irrelevant to the charges at issue. But given that such negligence, even if proven, is no defense as a matter of law, defendants should not be permitted present argument or evidence of possible negligence, including through cross-examination of government witnesses. Moreover, any hypothetical probative value of such evidence would be substantially outweighed by the danger of unfair prejudice to the government, misleading the jury, confusing the issues before the jury, and wasting time and should be excluded under Rule 403.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court grant the relief sought in the government's Omnibus Motion in Limine, and order the following: (1) that evidence of legitimate services provided by defendants be excluded; (2) that defendants are precluded from using interview summaries improperly

16

at trial; (3) that defendants may not offer defendants' own self-serving hearsay statements at trial; (4) that defendants are precluded from arguing for jury nullification; (5) that defendants are precluded from introducing evidence related to the criminal referral; and (6) that defendants may not offer evidence or argument that Medicare's or CIGNA's purported negligence contributed to or caused defendants' fraud.

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

ROBERT ZINK
Acting Chief, Fraud Section

DATED: July 16, 2019                _____/s/ _____
                                    DANIEL J. GRIFFIN
                                    Assistant Chief
                                    ROBYN N. PULLIO
                                    Trial Attorney
                                    Fraud Section, Criminal Division

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA