Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
Michael D. Driscoll (SBN 302507)
*mdriscoll@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Attorneys for Defendant
Aleksandr Suris

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>      v.<br><br>ALEKSANDR SURIS and MAXIM SVERDLOV,<br><br>             Defendants. | CASE NO. CR 17-420(A)-SJO<br><br>**DEFENDANT SURIS' MOTION TO SEVER COUNTS 6 THROUGH 12 OF THE FIRST SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |

1

1    Defendant Aleksandr Suris, by and through his attorneys of record, hereby
2  moves to sever counts six through twelve of the First Superseding Indictment.

4  DATED: August 11, 2019           Respectfully submitted,

6                                   LAW OFFICES OF RICHARD M. STEINGARD

8                                   ___/s/_____
9                                   RICHARD M. STEINGARD
                                    MICHAEL D. DRISCOLL
10                                  Attorneys for Defendant
11                                  ALEKSANDR SURIS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND STATEMENT OF RELEVANT FACTS

Defendants Aleksandr Suris and Maxim Sverdlov are jointly charged in the First Superseding Indictment ("FSI") with conspiracy to commit Medicare fraud, substantive Medicare fraud counts, and conspiracy to commit money laundering. In addition, Mr. Suris *alone* is charged with having conspired with Royal Care Pharmacy's then-pharmacist, Dimitry Gotlinsky, to defraud Mr. Gotlinsky's insurance carrier, Cigna Insurance (Count 6) and with six substantive counts of defrauding that insurer (Counts 7-12).

The Cigna charges, which are the crux of this motion, are based entirely on Mr. Gotlinsky's testimony. During trial, Mr. Gotlinsky testified on direct examination that he asked his personal physician to prescribe medications for certain conditions; he billed Cigna for the prescribed medications; he did not dispense the prescribed medications; but rather divided Cigna's reimbursement payment to Royal Care Pharmacy ("RCP") with Mr. Suris. The government's only other evidence concerning these charges are certified records of RCP's claims submitted to Cigna for Mr. Gotlinsky's medications. (Gov't Exh. 102-105.) These exhibits simply show that bills were sent to Cigna. They do not corroborate the alleged misconduct or indicate whether the medications were actually dispensed or remained on RCP's shelves.[1]

Following direct examination, Mr. Suris' counsel cross-examined Mr. Gotlinsky on the various charges, including the Cigna counts. When that examination was completed, Mr. Sverdlov's counsel began questioning Mr. Gotlinsky. Initially, Mr. Sverdlov's counsel's questions related to the Medicare

---

[1] The defense stipulated to the foundation and admissibility of these exhibits, and to the fact that Cigna would not reimburse a pharmacy if prescribed medications were not dispensed.

fraud and money laundering charges. At one point, however, he shifted his examination to Mr. Suris' and Mr. Gotlinsky's commission of the Cigna fraud counts, even though Mr. Sverdlov is neither charged nor named in those counts. This line of questioning emphasized that Mr. Gotlinsky and Mr. Suris had *in fact* committed these crimes. Indeed, Mr. Sverdlov's counsel questioned Mr. Gotlinsky about *uncharged* Cigna-related fraudulent conduct by asking why he failed to correct the prosecutor on direct examination for only asking about the medications identified in Counts 7-12 when he and Mr. Suris had engaged in defrauding Cigna with respect to numerous *other* medications. He then expanded the questioning to Mr. Suris' and Mr. Gotlinsky's *uncharged* fraudulent Cigna-related conduct related to Mr. Gotlinsky's *wife's* medications, underscoring that Messrs. Suris and Gotlinsky willfully victimized *Mrs.* Gotlinsky.[2]

In effect, Mr. Sverdlov's counsel became a *co-prosecutor* on the Cigna charges through this line of questioning. When he completed his examination, government counsel conducted re-direct examination by eliciting additional information about the charged and *uncharged* Cigna-related conduct, including *Mrs.* Gotlinsky's reaction when she learned what her husband and Mr. Suris had done.

For his part, Mr. Suris' counsel attempted to raise an objection to Mr. Sverdlov's tactic without drawing attention to this line of questioning by requesting a sidebar conference with the Court. It is counsels' recollection that the Court indicated it would address any issues at the next recess. At that time, Mr. Suris' counsel stated his objection to what had just occurred and moved for a severance. The Court stated such a motion would need to be filed with the Court before it would be considered.

---

[2]   The government did not elicit any such testimony during its direct examination of Mr. Gotlinsky, nor did Mr. Suris' counsel raise these points during his cross-examination.

## II.

## **ARGUMENT**

The bedrock principle of the criminal justice system is that a defendant receives a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 684-45 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses . . . ."). Under the circumstances presented here, Mr. Suris can no longer receive a fair trial as to the Cigna counts. Whether through zealous advocacy or a misguided strategy, Mr. Sverdlov's counsel's questioning of Mr. Gotlinsky about charged and uncharged Cigna-related fraudulent conduct acted to co-prosecute those charges to the extent that Mr. Suris' conviction on the Cigna counts is now assured.

The Court may sever counts *at any stage of the proceedings* if their joinder appears to prejudice the defendant. Fed. R. Crim. P. 14(a). Indeed, as "the Supreme Court emphasized, "in joint trials 'the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear.'" *United States v. Johnson*, 478 F.2d 1129, 1132 (5th Cir. 1973) (quoting *Schaffer v. United States*, 362 U.S. 511, 516 (1960)). The key concern is clearly whether the defendant is prejudiced by the joinder. *See United States v. Holland*, 10 F.3d 696, 699 (10th Cir. 1993) ("Prejudicial joinder occurs under Rule 14 when an individual's right to a fair trial is either threatened or actually deprived." (internal quotation marks and citation omitted)).

The instant case appears to be singularly unique and extraordinary. In this hastily prepared motion, we have not found any cases addressing the situation at bar in which the attorney for one defendant—who is not charged with certain counts—presses the sole witness on facts underlying counts charged (*and uncharged*) against a second defendant, thereby eliciting damaging and incriminating testimony against only the second defendant on those counts. We have located cases in which severances were granted for antagonistic defenses. There, both clients are charged with an offense, and courts have granted severances

based on the mere potential for prejudice if one defendant may co-prosecute the other defendant on the charges. *See United States v. Sherlock,* 962 F.2d 1349, 1363 (9th Cir. 1989) ("The primary danger that the rule seeks to avoid is a defendant faced with two prosecutors—the government and his codefendant. Examination of the record does not convince us that each counsel played the role of a second prosecutor. Each directed his examination of witnesses toward establishing the innocence of his client and not the guilt of the other." (internal citation omitted)). Here, one defendant—through counsel—inculpated the second defendant on charged and uncharged conduct that had nothing to do with the first defendant

      To be clear, Mr. Suris is not alleging *prosecutorial* misconduct. Nonetheless, the government contributed to the prejudice. Realizing the door that Mr. Sverdlov's counsel had opened, government counsel conducted a re-direct examination that highlighted Mr. Sverdlov's counsel's questioning and elicited additional incriminating testimony about Mr. Suris' and Mr. Gotlinsky's charged and uncharged Cigna-related fraudulent conduct, thereby repeating and reinforcing the testimony improperly adduced by Mr. Sverdlov's counsel.

      We have considered other alternatives to a severance, but there are none. Striking Mr. Gotlinsky's responses to Mr. Sverdlov's counsel's questions and the prosecutor's follow-up questions and instructing the jury to disregard them would not and could not alleviate the taint that has already occurred; similarly, a limiting instruction would be woefully inadequate. *See Kennedy v. Lockyer,* 379 F.3d 1041, 1056 n.19 (9th Cir. 2004) (collecting cases highlighting inefficacy of limiting instructions). Simply put, the damage has been done and cannot be undone.

      Because the defense is requesting a severance, if the Court grants the instant motion and declares a mistrial on Counts 6-12, it would not prohibit a second prosecution under the Double Jeopardy Clause. *See United States v. Mondragon*,

741 F.3d 1010, 1013 (9th Cir. 2013) ("[W]hen the defendant seeks or consents to mistrial, we presume that the defendant 'gives up his or her right to a verdict by that jury.'" (citation omitted)); *United States v. Smith*, 621 F.2d 350, 351 (9th Cir. 1980) ("An implied consent to a mistrial, like an express consent, removes any double jeopardy bar to retrial."). Further, a severance and a second trial for Mr. Suris on the Cigna counts would not be unduly burdensome on the government or the Court. As noted above, aside from stipulations, it is a one-witness case and, apart from jury selection, a second trial on only the Cigna counts should take no more than one day. Mr. Gotlinsky is a cooperating government witness and would be available to testify in a retrial. *See United States v. Tarango*, 396 F.3d 666, 678 n.8 (5th Cir. 2005) ("We recognize that costs are never an inconsequential consideration in the retrial of a defendant. Nonetheless, it is significant that the Government has never argued . . . that it will have any difficult securing the presence of the witness[] that will be expected to be recalled at a retrial of [the defendant].").

Trials sometimes create unforeseen events. This is one of them. No one could have anticipated that Mr. Sverdlov's counsel would question Mr. Gotlinsky on conduct that did not concern Mr. Sverdlov, much less *uncharged* conduct. If the primary goal is to ensure that Mr. Suris receives a fair trial, we ask that the Court grant a severance of the Cigna counts.

